**FILED**
IN CLERK'S OFFICE
US DISTRICT COURT E.D.N.Y.

★ DEC 3 0 2016 ★

BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

MARIA COLLADO, MARINO LALANE,
JOSE COLLADO, DELMIRA BAEZ, and
CARMEN LOPEZ,

                              Plaintiffs,

                -against-

946 BUSHWICK AVENUE, LLC,
SAFEGUARD REALTY MGNT, INC.,
GRAHAM JONES, and BENJAMIN SOPKIN,

                             Defendants.

-----------------------------------------------------------------X

**ORDER TO SHOW CAUSE**

# CV-Ci-16-07173

GLASSER, J.

BLOOM, M.J.

Upon the annexed affidavits of MARIA COLLADO, MARINO LALANE, JOSE COLLADO, DELMIRA BAEZ, and CARMEN LOPEZ, sworn to the 21st day of December, 2016, and the affirmation of LINA LEE, dated December 29, 2016, the annexed Memorandum of Law, the attached exhibits and upon all the proceedings heretofore had herein, let the Defendants or Defendants' attorneys show cause before me or one of the Judges of this Court, at a Motion Term of the Federal District Court for the Eastern District of New York, Room _____, located at 225 Cadman Plaza East, in the County of Kings, State of New York, on the ____ day of December, 2016, at 9:00 o'clock in the forenoon of that day, or as soon thereafter as counsel can be heard, why an Order should not be made, pursuant to 28 U.S.C. § 2202 and the F.R.C.P. 65 and 54:

    1)    Granting a preliminary injunction staying Defendants 946 BUSHWICK AVENUE, LLC, SAFEGUARD REALTY MNGT, INC., GRAHAM JONES, and BENJAMIN SOPKIN, from taking any action to remove from operation the sole elevator located at 946 Bushwick Avenue, Brooklyn, NY 11221 ("946 Buswick Avenue");

2)     Granting an order staying Defendants from harassing Plaintiffs in retaliation for enforcing their rights; and

3)     Granting such other and further relief as may be just and proper.

## WAIVER OF SECURITY

Based upon Plaintiff's indigent status, the requirement of FRCP 65 (c) is waived.

## TEMPORARY RESTRAINING ORDER

Pending the hearing and determination of this motion, LET Defendants 946 BUSHWICK AVENUE, LLC, SAFEGUARD REALTY MNGT, INC., GRAHAM JONES, and BENJAMIN SOPKIN be stayed from taking any action to remove from operation the elevator located at 946 Bushwick Avenue, Brooklyn, NY 11221 and from harassing Plaintiff in retaliation for enforcing their rights; and


SUFFICIENT CAUSE THEREFOR APPEARING, LET personal service, delivery to an authorized agent, delivery and mail to Defendants' actual place of business, or delivery by mail to the address designated with the New York Department of State of a copy of this order, together with a copy of the affidavits annexed thereto, on Defendants on or before the _____ day of December, 2016, be sufficient.

Proof of service of these papers is to be filed with the Court on or before the _____ day of January 2016.


Dated:        December 30, 2016
              Brooklyn, NY


                                        _____
                                        UNITED STATES DISTRICT JUDGE

2

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
MARIA COLLADO, MARINO LALANE,
JOSE COLLADO, DELMIRA BAEZ, and
CARMEN LOPEZ,

                           Plaintiffs,          **AFFIRMATION**

       -against-

                                 16-Civ. _____

946 BUSHWICK AVENUE, LLC,
SAFEGUARD REALTY MGNT, INC.,
GRAHAM JONES, and BENJAMIN SOPKIN,

                           Defendants.
------------------------------------------------------------------X

      LINA LEE, an attorney duly licensed to practice law in the Courts of the State of New

York, and in the Eastern District of New York, hereby affirms the following facts under penalty

of perjury, and sets forth the following propositions of law:

      1.     I am of counsel to Brooklyn Legal Services Corp. A, 260 Broadway, Suite 2,

Brooklyn, NY 11211, attorney for Plaintiffs MARIA COLLADO, MARINO LALANE, JOSE

COLLADO, DEMIRA BAEZ, and CARMEN LOPEZ ("Plaintiffs") herein, and as such I am

fully familiar with all the facts and circumstances of this case.

      2.     I make this affirmation in support of Plaintiffs' motion for a temporary restraining

order or preliminary injunction staying Defendants 946 BUSHWICK AVENUE, LLC,

SAFEGUARD REALTY MGNT, INC., GRAHAM JONES, and BENJAMIN SOPKIN

("Defendants") from taking any action to remove from service the sole elevator located at 946

Bushwick Avenue, Brooklyn, NY 11221 and from harassing Plaintiffs in retaliation for enforcing

their rights pending the determination of this action for injunctive and declaratory relief.

3.     Defendants plan to remove from operation the elevator located at 946 Bushwick Avenue, a six-story building containing 53 apartments. The elevator will be taken out of service for a period of four to six months, commencing on January 2, 2017.  *See* Exhibit A (Important Notice to All).

4.     This action seeks to protect the elderly, disabled, and mobility-impaired tenants' right of egress and ingress to their apartments during the elevator's installation.

5.     As set forth in the annexed affidavits and in the annexed complaint the tenants of 946 Bushwick Avenue are unable or severely limited in their ability to use stairs because of their disabilities.

6.     Defendants know that the named Plaintiffs reside in the premises and have mobility issues.

7.     However, Defendants have not taken appropriate steps to provide, maintain, or modify services in preparation for the removal of the building's sole elevator.

8.     Defendants also have failed to ensure that the tenants with disabilities at 946 Bushwick Avenue will have access to internal building services or egress in the event of emergency, during the term of the elevator removal.

9.     Finally, Defendants have not offered the named Plaintiffs, who are severely disabled and elderly, a reasonable accommodation while the elevator will be out of commission for up to six months.

10.     Plaintiffs have made diligent efforts to contact Defendants to provide proper notice of the instant motion as required by Federal Rules of Civil Procedure 65 and Local Rules of the Eastern District of New York.

11.     On December 8, 2016, Plaintiffs' counsel notified Defendants of the instant emergency application by mailing a demand letter written to Defendant Graham Jones ("Defendant Jones"), who is the Head Officer of 946 Bushwick according to the Multiple Dwelling Registration filed with the New York City Department of Housing Preservation and Development, Benajmin Sopkin ("Defendant Sopkin") and Safeguard Realty Management, Inc., the named Officer and Managing Agent of 946 Bushwick Avenue was copied in the letter. *See* Exhibit B (Pl.'s Demand Letter dated Dec. 8, 2016).

12.     The Demand Letter dated Dec. 8, 2016, specifically notifies Defendants that Plaintiffs are seeking a federal temporary restraining order by way of a federal law suit and requested a response by December 16, 2016. As of date, Defendant has not responded.

13.     On December 16, 2016, Plaintiffs' counsel notified Defendants of the instant emergency application a second time and offered an extension in time to respond by mailing a second demand letter to Defendants Jones, Sopkin and Safeguard Realty Management, Inc. *See* Exhibit B (Pl.'s Demand Letter dated Dec. 16, 2016).

14.     The second demand letter dated December 16, 2016, again specifically notifies Defendants that Plaintiffs are seeking a federal temporary restraining order and extended the time to respond to December 21, 2016, to afford Defendants an opportunity to propose a reasonable accommodation.

15.     Defendants did not respond.

16.     On December 29, 2016, Plaintiffs' counsel made a courtesy call to Safeguard Realty Management, Inc. and left a voicemail informing them that Plaintiffs are seeking a federal temporary restraining order by way of federal law suit on December 30, 2016. Plaintiffs'

counsel left in the voicemail contact for the undersigned and the specific time and location of the application.

## STATEMENT OF FACTS

17.     Plaintiffs live at 946 Bushwick Avenue, Brooklyn, NY 11221, housing owned and operated by the Defendants.

18.     Plaintiff MARIA COLLADO ("Ms. Collado") lives in Apartment B7 on the second floor.  *See* Collado Aff. dated Dec. 21, 2016.

19.     Plaintiff MARINO LALANE ("Mr. Lalane") lives in Apartment B8 on the second floor.  *See* Lalane Aff. dated Dec.21, 2016.

20.     Plaintiff JOSE COLLADO ("Mr. Collado") lives in Apartment C8 on the third floor.  *See* Jose Collado Aff. dated Dec.21, 2016.

21.     Plaintiff DELMIRA BAEZ ("Ms. Baez") lives in Apartment F2 on the sixth floor.  *See* Baez Aff. dated Dec. 21, 2016.

22.     Plaintiff CARMEN LOPEZ ("Ms. Lopez") lives in Apartment F3 on the sixth floor.  *See* Lopez Aff. dated Dec. 21, 2016.

23.     Plaintiffs are unable or severely limited in their ability to use stairs because of his/her age and disabilities.

24.     Ms. Collado is a disabled mobility-impaired 84-year old senior who has been living in her rent-stabilized apartment for 25 years.  Collado Aff. ¶¶ 3-4.  She has been bound to a wheelchair for the last eight years.  She cannot walk and needs assistance getting in and out her wheelchair.  *Id.*

25.     She receives an income of $721.00 and her rent is $657.58 per month.  *Id.* ¶ 16.

4

26.     Ms. Collado uses her wheelchair to move around in the apartment but cannot leave the apartment alone because she is unable to push her wheelchair around for long periods of time. *Id.* ¶ 4. Her daughter, Gladys Collado, helps her out of the apartment to run errands, go to the doctor, pick up medication, and visit family and friends. *Id.* ¶ 5. Her daughter relies on the elevator to get her mother in and out of the building. *Id.* She cannot carry Ms. Collado or the wheelchair up and down the stairs. *Id.* ¶ 10.

27.     Mr. Lalane is disabled, mobility-impaired 69-year old and lives with his son, Marino J. Lalane. Lalane Aff. ¶¶ 1-2. They have been living in their rent-stabilized home for 38 years. *Id.*

28.     He receives a fixed income of $756 per month and his monthly rent is $790. *Id.* ¶ 22.

29.     Mr. Lalane is a cancer survivor. He had colon cancer and received surgery in 2000, followed by six months of chemotherapy and radiation treatments. *Id.* ¶ 3. He was in a coma for 14 days. *Id.*

30.     Although the surgery stopped the spread of cancer, Mr. Lalane struggles with the side effects including chronic pain, cramps in the abdomen, fatigue and nausea. *Id.* ¶ 4. He does not have the strength to walk short distances and has trouble breathing. *Id.* ¶¶ 5-6.

31.     In addition, he suffers from appendicitis, arthritis, asthma, diabetes, and cataracts in both eyes which only exacerbate his shortness of breath, lack of energy, and ability to ascend and descend stairs. *Id.* ¶ 7. The appendicitis causes great pain around the stomach area, causing him to vomit and the arthritis causes stiffness in his legs, preventing him from standing or walking for long periods of time. *Id.* ¶ 9. His asthma is especially concerning since he cannot climb down or up one flight of stairs before he starts coughing and wheezing. *Id.* ¶ 12.

32.     The cataracts are causing blurry vision and he cannot see clearly beyond one foot. *Id.* ¶ 13.

33.     Mr. Collado is a disabled, mobility impaired 54-year old tenant who has resided in his rent-stabilized apartment for 22 years with his wife, Francisca Collado.  Jose Collado Aff. ¶ 2.  They live on the third floor.  *Id.*

34.     His yearly fixed income is $1290 per month and their rent is $912.  *Id.* ¶ 18.

35.     Mr. Collado has been suffering from diabetes for the last 10 years. *Id.* ¶ 3.  The high blood sugar level, known as hyperglycemia, has caused damage to his kidneys, heart, blood vessels, and nerves.  *Id.*  The hyperglycemia causes sores, blisters, and cuts to form on his feet. *Id.* ¶ 4.  The sores do not heal, causing him such excruciating pain that he is forced to wear a cast around his foot to walk.  *Id.* ¶ 5.  His diabetes is life-threatening and he is not able to descend and ascend stairs without pain.  *Id.* ¶¶ 6-8.

36.     Ms. Baez is a disabled, mobility-impaired 84-year old who has—for 32 years—resided in her rent-stabilized apartment.  Baez Aff. ¶¶ 1-2.  She lives alone and cares for herself. *Id.*

37.     She receives a fixed monthly income of $1,078.00 and her monthly rent is $433. *Id.* ¶ 14.

38.     She suffers from knee joint weakness and struggles to carry on daily errands. *Id.* ¶ 3.

39.     Ms. Baez uses the elevator several times a day to get groceries, do laundry, and go to church.  *Id.* ¶ 4.  She goes to church every Tuesday, Thursday, Friday, and Sunday for service. Church is essential to her livelihood and she has not missed one service for the past 10 years.  *Id.*

40.     Ms. Lopez is 59-years old and lives her husband, Justino Lopez, who is 70-years old.  Lopez Aff. ¶ 2.

41.     Both suffer from joint weakness around the knees and have trouble taking care of daily errands due to fatigue.  *Id.* ¶ 3.

42.     Her husband especially suffers from high blood pressure and had stents placed in his artery to reduce the chance of a heart attack.  *Id.* ¶ 6.  Although the stent opened up his artery to allow better blood flow, his risk for a heart attack is still high.  *Id.* ¶ 7.  Going up and down six flights of stairs would be life-threatening.  *Id.* ¶ 12.

43.     On or around December 6, 2016, Plaintiffs saw a notice on the elevator that Defendants plan to shut down the elevator services from January 2, 2017, for four to six months. This is the only working elevator in the entire building.  *See* Collado Aff. ¶ 7; Baez Aff. ¶ 5; Jose Collado Aff. ¶ 12; Lalane Aff. ¶ 15; Lopez Aff. ¶ 9.

44.     Plaintiffs are low-income and cannot afford to move.  *See* Collado Aff. ¶ 16; Baez Aff. ¶ 14; Jose Collado Aff. ¶ 18; Lalane Aff. ¶ 22; Lopez Aff. ¶ 18.

45.     Plaintiffs do not have any relatives who can provide temporary accommodations for them.  *See* Collado Aff. ¶ 15; Baez Aff. ¶ 13; Jose Collado Aff. ¶ 17; Lalane Aff. ¶ 21; Lopez Aff. ¶ 17.

46.     Defendants are on notice that many elderly tenants and tenants with disabilities reside at the premises. However, requests for reasonable accommodations for these tenants have been ignored.  *See* Exhibit B.

47.     Without elevator service, the Plaintiffs' daily activities will be severely impaired as they are unable to descend and ascend the stairs to run simple errands such as grocery shopping, taking the trash out, going to church, socializing with friends and family and visiting

7

their doctors.  *See* Collado Aff. ¶¶ 11-14; Baez Aff. ¶¶ 7-12; Jose Collado Aff. ¶¶ 14-16; Lalane Aff. ¶¶ 18-20; Lopez Aff. ¶¶ 11-16.

48.     The lack of elevator services is essentially trapping these elderly and disabled tenants in their apartments. *See* Collado Aff. ¶¶ 12-13; Baez Aff. ¶ 9; Lalane Aff. ¶ 18; Lopez Aff. ¶ 13.

49.     The Plaintiffs' lives will be in grave danger because they will not be able to leave their own apartments in a case of a medical emergency, fire or gas leak.  *See* Collado Aff. ¶¶ 12-13; Baez Aff. ¶ 10-11; Lopez Aff. ¶ 14.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X

MARIA COLLADO, MARINO LALANE,
JOSE COLLADO, DELMIRA BAEZ, and
CARMEN LOPEZ,

                              Plaintiffs,        **AFFIDAVIT OF**
                                          **JOSE COLLADO**

     -against-
                                    16-Civ. _____

946 BUSHWICK AVENUE, LLC,
SAFEGUARD REALTY MGNT, INC.,
GRAHAM JONES, and BENJAMIN SOPKIN,

                              Defendants.
------------------------------------------------------------X

STATE OF NEW YORK   )
                        ) SS.:
KINGS COUNTY        )

Jose Collado, being duly sworn, deposes and states as follows:

1. My name is Jose Collado and I reside at 946 Bushwick Avenue, Apartment C8, Brooklyn, NY 11221. I have lived in my rent-stabilized apartment for 22 years.

2. I am 54 years old and my primary language is Spanish. I live with my wife, Francisca Collado, she is 56 years old. We live on the third floor.

3. I have suffered with diabetes, Type 2, for the last ten years. The high blood sugar, otherwise known as hyperglycemia, has caused damage to many parts of my body, including my kidneys, heart, blood vessels, and nerves.

4. The hyperglycemia has especially caused damage to my feet. I get sores around my feet, which fails to heal and the sores remain open.

5. I have so many open sores, blisters and cuts that I have to wear a brace around my right foot every single day to allow me to walk on it.

6. In addition to the excruciatingly painful open sores, I experience numbness or sharp tingling on my feet.

7. I am unable to walk short distances. My foot brace prevents me from walking up and down stairs by myself.

8. My diabetes is serious and life-threatening.

9. In fact, I recently had surgery to remove my pancreas eight years ago. The remaining scar from the surgery still causes pain. When I try to walk or go up the stairs, it feels like my skin is tearing open.

10. In addition, I have high blood pressure and at risk of having a heart attack.

11. Every morning and night, I take four pills and although the medication helps, I still experience great pain and have trouble breathing.

12. On or around December 6, 2016, I saw a notice on the elevator that my landlord plans to shut down the elevator services from January 2, 2017, for four to six months. This is the only working elevator in the entire building.

13. On information and belief, the elevator works fine, my landlord wants to modernize it.

14. I use the elevator multiple times a day to run errands, take out the trash, pick up groceries pick up medication, visit family and friends, and visit my doctor.

15. I am not able to walk up and down these stairs because of my foot brace and open sores. I am also afraid that the stress would cause my heart rate to go up.

16. If the elevator is taken out of service for six months and the landlord does not offer me a reasonable accommodation, it would severely impair my daily life activities.

17. I do not have any relatives who can provide temporary accommodation while the elevator is shut down.

18. Our yearly income is $840 and my current rent is $912 per month.  We cannot afford to move.

19. I declare under penalty of perjury that the foregoing is true and correct.

WHEREFORE, I respectfully request that the Court grant the relief demanded and such further relief as the Court may deem just and proper.

Dated: New York, New York
      December 21, 2016

JOSE COLLADO

Sworn to before me this

21ˢᵗ day of December 2016

NOTARY PUBLIC

LINA LEE
NOTARY
NO. 02LE6307467
QUALIFIED IN
QUEENS COUNTY
COMM. EXP.
07/07/20__
PUBLIC
STATE OF NEW YORK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
MARIA COLLADO, MARINO LALANE,
JOSE COLLADO, DELMIRA BAEZ, and
CARMEN LOPEZ,

|  |  |
|---|---|
| Plaintiffs, | **AFFIDAVIT OF MARINO LALANE** |
| -against- | 16-Civ. _____ |

946 BUSHWICK AVENUE, LLC,
SAFEGUARD REALTY MGNT, INC.,
GRAHAM JONES, and BENJAMIN SOPKIN,

                                      Defendants.
-------------------------------------------------------------X

STATE OF NEW YORK    )
                       ) SS.:
KINGS COUNTY       )

Marino Lalane, being duly sworn, deposes and states as follows:

1. My name is Marino Lalane and I reside at 946 Bushwick Avenue, Apartment B8, Brooklyn, NY 11221. I have lived in this rent-stabilized apartment for 38 years.

2. I am 69 years old and my primary language is Spanish. I live with my son, Marino J. Lalane. We live on the second floor.

3. I suffer from colon cancer and received surgery in 2000. After the surgery, I received chemotherapy and radiation treatment for about six months. I was in a coma for 14 days.

4. Although the surgery stopped the spread of cancer for now, I am left with the chronic and lifelong side effects of my cancer and surgery including constant pain and cramps in the abdomen, weakness and fatigue, and nausea.

5. My body is weak and I do not have the strength to walk short distances.

6. I have trouble breathing and unable to walk one block without resting.

7. In addition to my cancer treatment, I suffer from appendicitis, arthritis, asthma, diabetes, and cataracts, which I take multiple medications daily.

8. Every morning and night, I take 8 pills for my illnesses and although the medication helps, I still experience great pain and have trouble breathing.

9. My appendicitis causes me great pain and at times I have trouble standing up straight. I even vomit at times due to this pain.

10. My arthritis exacerbates the pain, causing joint pain and stiffness in my legs, especially around my knees.

11. When I walk long distances or up and down stairs, my knees swell, which causes unbearable pain. I am unable to walk for 2 minutes at a time.

12. Due to my asthma, I have difficulty breathing, I constantly have chest pains, and when I walk a flight of stairs, I start to cough and wheeze.

13. My cataracts cause blurry vision and I am unable to see more than one foot. Because of my poor vision, it would be difficult to use stairs.

14. I use the elevator multiple times a day to run errands, do laundry, go to the supermarket, pick up medication, and visit my doctors.

15. On or around December 6, 2016, I saw a notice on the elevator that my landlord plans to shut down the elevator services from January 2, 2017, for four to six months. This is the only working elevator in the entire building.

16. Upon information and belief, the elevator works but my landlord wants to modernize it.

17. I am so afraid that if I am forced to climb the stairs every single day for the next six months, I might fall or suffer from a life-threatening incident.

18. If the elevator does not work, I am afraid to leave my apartment because using the stairs is risky to my health.

19. It will be impossible for me to run errands, see my doctors, take out the trash and even pick up my medication.

20. If the elevator is taken out of service for six months and the landlord does not offer me a reasonable accommodation, it would severely impair my daily life activities.

21. I do not have any relatives who can provide temporary accommodations while the elevator is shut down.

22. My monthly income is $756 per month and I get $212 through the Disability Rent Increase Exemption and my current rent is $790 per month.  I cannot afford to move.

23. I declare under penalty of perjury that the foregoing is true and correct.

WHEREFORE, I respectfully request that the Court grant the relief demanded and such further relief as the Court may deem just and proper.

Dated: New York, New York
        December 21, 2016

Sworn to before me this

21st day of December 2016

x _Marino Lalane_
MARINO LALANE

_Lina Lee_
NOTARY PUBLIC

LINA LEE
NOTARY
NO. 02LE6307467
QUALIFIED IN
QUEENS COUNTY
COMM. EXP.
07/07/20__
PUBLIC
STATE OF NEW YORK

UNITED STATES DISTRICT COURT
EASTERNDISTRICT OF NEW YORK
------------------------------------------------------------X
MARIA COLLADO, MARINO LALANE,
JOSE COLLADO, DELMIRA BAEZ, and
CARMEN LOPEZ,

                            Plaintiffs,          **AFFIDAVIT OF**
                                                       **CARMEN LOPEZ**

      -against-
                                      16-Civ. _____

946 BUSHWICK AVENUE, LLC,
SAFEGUARD REALTY MGNT, INC.,
GRAHAM JONES, and BENJAMIN SOPKIN,

                            Defendants.
------------------------------------------------------------X

STATE OF NEW YORK   )
                          ) SS.:
KINGS COUNTY       )

Carmen Lopez, being duly sworn, deposes and states as follows:

1. My name is Carmen Lopez and I reside at 946 Bushwick Avenue, Apartment F3, Brooklyn, NY 11221. I have lived in my rent-stabilized apartment for 34 years.

2. I am 59 years old and my primary language is Spanish. I live with my husband, Justino Lopez, who is 69 years old. We live on the sixth floor.

3. We both suffer from joint weakness around the knees. My husband and I have been feeling more weak and fatigued. We have trouble taking care of our daily errands.

4. I work part-time as a school aide in a middle school. Although I enjoy working with the kids, I am exhausted after work.

5. My husband is especially weak and suffers from high blood pressure.

6. Due to his high blood pressure the doctor had to place stents into his heart to open his arteries. The doctor told us it would reduce the chance of a heart attack.

7.  Although the stent has reduced our fears, his risk for a heart attack is still high.

8.  We use the elevator multiple times a day to go to work, run errands, grocery shop, and do laundry.

9.  On or around December 6, 2016, I saw a notice on the elevator that my landlord plans to shut down the elevator services from January 2, 2017, for four to six months. This is the only working elevator in the entire building.

10. Upon information and belief, the landlord wants to modernize it.

11. Without a working elevator, I cannot go to work and take care of my daily errands. I am responsible to do the laundry and grocery shopping. I am unable to physically carry groceries and laundry up and down six flights of stairs.

12. Because of my husband's condition any physical strain and stress is life threatening. I am frightened that the physical exertion of traveling six flights of stairs could cause a heart attack.

13. The elevator shut-down would essentially trap my husband in the apartment.

14. I am also terrified that if my husband suddenly has a heart attack or medical problem when I am not at home, he cannot make it down the stairs. In addition, it would be more difficult for emergency medical teams to get him outside of the building.

15. If there was a fire or gas leak, my husband would not be able to exit the building.

16. If the elevator is taken out of service for six months and the landlord does not offer me a reasonable accommodation, it would severely impair our daily life activities.

17. We do not have any relatives who can provide temporary accommodations while the elevator is shut down for six months.

18. Our monthly income combined is $2,068.56 per month and our current rent is $945.75

per month.  We cannot afford to move.

19. I declare under penalty of perjury that the foregoing is true and correct.

WHEREFORE, I respectfully request that the Court grant the relief demanded and such further relief as the Court may deem just and proper.


Dated: New York, New York
      December 21, 2016




                                               CARMEN LOPEZ

Sworn to before me this
___21___ day of December 2016


NOTARY PUBLIC

UNITED STATES DISTRICT COURT
EASTERNDISTRICT OF NEW YORK
-------------------------------------------------------------X

MARIA COLLADO, MARINO LALANE,
JOSE COLLADO, DELMIRA BAEZ, and
CARMEN LOPEZ,

                             Plaintiffs,        **AFFIDAVIT OF**
                                                    **DELMIRA BAEZ**

      -against-

                                     16-Civ. _____

946 BUSHWICK AVENUE, LLC,
SAFEGUARD REALTY MGNT, INC.,
GRAHAM JONES, and BENJAMIN SOPKIN,

                            Defendants.
-------------------------------------------------------------X

STATE OF NEW YORK    )
                        ) SS.:
KINGS COUNTY         )

Delmira Baez, being duly sworn, deposes and states as follows:

1. My name is Delmira Baez and I reside at 946 Bushwick Avenue, Apartment F2, Brooklyn, NY 11221.  I have lived in my rent-stabilized apartment for 32 years.

2. I am 84 years old and my primary language is Spanish.  I live alone on the sixth floor.

3. I suffer from joint weakness around the knees.

4. I use the elevator multiple times a day to run errands including grocery shopping, laundry, taking out the trash, visiting friends and family, and going to church.  Church is very important to me.  I go every Tuesday, Thursday, Friday, and Sunday for service. This is essential to my livelihood and I have not missed one service for the past 10 years.

5. On or around December 6, 2016, I saw a notice on the elevator that my landlord plans to shut down the elevator services from January 2, 2017, for four to six months.  This is the only working elevator in the entire building.

6. Upon information and belief, the landlord wants to modernize it.

7. Without a working elevator, I am unable to take care of my daily errands.  I would not be able to carry groceries and laundry, pick up mail, take out the trash, and even go to church.

8. I live alone and have been taking care of myself for 32 years.  I am physically incapable of going up and down the stairs alone.  There is no one who can help me.

9.  The elevator shut-down would essentially trap me in my apartment and prevent me from completing daily activities.

10. I am also terrified that if I experience a medical emergency such as a heart attack or even a fire in the building, I would not be able to get safety down the stairs.

11. The stairs are marble and slippery and I have trouble even walking on them.

12. If the elevator is taken out of service for six months and the landlord does not offer me a reasonable accommodation, it would severely impair my daily life activities.

13. I do not have any relatives who can provide temporary accommodations while the elevator is shut down.

14. My monthly income is $1,078.00 and my current rent is $433.44 per month.  I cannot afford to move.

15. I declare under penalty of perjury that the foregoing is true and correct.

WHEREFORE, I respectfully request that the Court grant the relief demanded and such further

relief as the Court may deem just and proper.


Dated: New York, New York
         December 21, 2016



                                              _Delmira Baez_
Sworn to before me this                        DELMIRA BAEZ
_21st_ day of December 2016



_Lina Lee_
NOTARY PUBLIC

LINA LEE
NOTARY
NO. 02LE6307467
QUALIFIED IN
QUEENS COUNTY
COMM. EXP.
07/07/20
PUBLIC
STATE OF NEW YORK

UNITED STATES DISTRICT COURT
EASTERNDISTRICT OF NEW YORK

-------------------------------------------------------------------X

MARIA COLLADO, MARINO LALANE,
JOSE COLLADO, DELMIRA BAEZ, and
CARMEN LOPEZ,

                        Plaintiffs,

     -against-

946 BUSHWICK AVENUE, LLC,
SAFEGUARD REALTY MGNT, INC.,
GRAHAM JONES, and BENJAMIN SOPKIN,

                        Defendants.

-------------------------------------------------------------------X

**AFFIDAVIT OF MARIA COLLADO**

16-Civ. _____

STATE OF NEW YORK    )
                         ) SS.:
KINGS COUNTY          )

Maria Collado, being duly sworn, deposes and states as follows:

1. My name is Maria Collado and I reside at 946 Bushwick Avenue, Apartment B7, Brooklyn, NY 11221.  I have lived in my rent-stabilized apartment for 25 years.

2. I am 84 years old and my primary language is Spanish.  I live on the second floor.

3. I have been confined to my wheelchair for the past 8 years.  I cannot walk and have trouble even standing and have to be helped into and out of my wheelchair.

4. I use my wheelchair to move around in my apartment but I cannot leave my apartment without assistance because my arms get tired from using my wheelchair.

5. My daughter, Gladys Collado, helps me run my daily errands including visiting the doctor a couple of times a week, picking up my medication, and visiting family.

6. I rely on the elevator to get in and out of the building.

7. On or around December 6, 2016, I saw a notice on the elevator that my landlord plans to shut down the elevator services from January 2, 2017 for four to six months. This is the only working elevator in the entire building.

8. Upon information and belief, the landlord wants to modernize the elevator.

9. Without elevator services for six months, I would essentially be trapped in my own home.

10. My daughter is unable to carry my wheelchair or me up and down stairs and there is no one else around to help.

11. I would not be able to visit my doctors, see my family, or even pick up my medication. This is a matter of health and safety for me.

12. I cannot be left home alone. I am afraid that if I am in need some urgent care I will be unable to leave the building.

13. In the case of a fire or gas leak, I would be trapped in the building.

14. If the elevator is taken out of service for six months and the landlord does not offer me a reasonable accommodation, it would severely impair my daily life activities.

15. I do not have any relatives who can provide temporary accommodations while the elevator is shut down.

16. My monthly income is $721.00 and my current rent is $657.58 per month. I cannot afford to move.

17. I declare under penalty of perjury that the foregoing is true and correct.

WHEREFORE, I respectfully request that the Court grant the relief demanded and such further relief as the Court may deem just and proper.


Dated: New York, New York
      December 21, 2016



                                                                MARIA COLLADO

Sworn to before me this
21st day of December 2016



NOTARY PUBLIC

LINA LEE
NOTARY
NO. 02LE6307467
QUALIFIED IN
QUEENS COUNTY
COMM. EXP.
07/07/20__
PUBLIC
STATE OF NEW YORK

UNITED STATES DISTRICT COURT
EASTERNDISTRICT OF NEW YORK
-----------------------------------------------------------------X
MARIA COLLADO, MARINO LALANE,
JOSE COLLADO, DELMIRA BAEZ, and
CARMEN LOPEZ,

                        Plaintiffs,          **AFFIDAVIT OF**
                                          **TRANSLATION**

    -against-
                                      16-Civ. _____

946 BUSHWICK AVENUE, LLC,
SAFEGUARD REALTY MGNT, INC.,
GRAHAM JONES, and BENJAMIN SOPKIN,

                          Defendants.
-----------------------------------------------------------------X
STATE OF NEW YORK    )
                           SS.:
KINGS COUNTY        )

      STEPHANI ESPINAL, being duly sworn, deposes and says:

1. Deponent is over 21 years of age and is not a party to this proceeding.

2. Deponent is fluent in both English and Spanish, both written and spoken.

3. On the 21st day of December 2016, Deponent read the attached Affidavits and translated

    them into Spanish to Maria Collado, Marino Lalane, Jose Collado, Delmira Baez, and

    Carmen Lopez who are limited English speakers.  They confirmed that they understood

    the Spanish interpretation of the Affidavits.

4. The named Plaintiffs swore that the statements contained in the Affidavits were true to

    their own knowledge, with the exception of those statements alleged upon information

    and belief, and as to those statements they swore that they believed them to be true.

Dated: Brooklyn, New York
       December 21, 2016

STEPHANI ESPINAL

# EXHIBIT A



# IMPORTANT NOTICE TO ALL

### PLEASE NOTE:

## INSTALLATION FOR THE NEW ELEVATOR WILL BEGIN ON JANUARY 2ND, 2017. THE CURRENT ELEVATOR WILL BE GOING COMPLETELY OFF-LINE AND NOT IN SERVICE FOR 4-6 MONTHS.

### WE APOLOGIZE FOR ANY INCONVENIENCE.

### THANK YOU FOR YOUR COOPERATION.

Safeguard Realty Management NJ LLC
75 Whitemarsh Street, Dumont, NJ 07663
Office: 973-928-3255 / Fax: 973-771-5068     www.safeguardrealty.com

Safeguard Realty Management Inc.
150 W. 31st Street, 4 FL, New York, NY 10001
Office: 212-947-2007 / Fax: 212-947-2700

# EXHIBIT B

**THOMAS McC. SOUTHER**, BOARD CHAIR
**MARTIN S. NEEDELMAN, ESQ.**, CO-EXECUTIVE DIRECTOR, CHIEF COUNSEL
**PAUL J. ACINAPURA, ESQ.**, CO-EXECUTIVE DIRECTOR, GENERAL COUNSEL



**Brooklyn Legal Services Corporation A**
SHRIVER TYLER MACCRATE CENTER FOR JUSTICE

December 8, 2016

Graham Jones
156 Fifth Avenue, 4th Floor
New York, NY 10010

Sent by USPS Priority Certified Mail

Re: <u>**Demand to Cease Reconstruction of Elevator**</u>

Dear Mr. Jones,

As you are well aware, my office represents the People's Garden of Bushwick Coalition ("the Coalition"), an association of tenants living at 920 Bushwick Avenue, 946 Bushwick Avenue, and 1075 Greene Avenue. It has come to our attention that you intend to discontinue elevator services at 946 Bushwick Avenue for a minimum of four (4) to six (6) months, to begin on January 2, 2016. **I am writing to demand that your office <u>cease</u> from conducting construction on the elevator until you take appropriate steps to provide, maintain, or modify services in preparation for the removal of the building's sole elevator.**

The removal of such an essential service for such an extended period of time is inexcusable. A large portion of the tenants at the premises suffer from physical disabilities and/or are elderly, and as such, require the use of elevator services to move throughout and out of their building. By law, you, as an owner, have a duty to provide each tenant with legally mandated and essential services, and to provide reasonable accommodations for those suffering from a disability.

In addition, as of the date of this writing, there are no permits filed with the Department of Buildings and no evidence to suggest that the elevator is dangerous and in need of immediate and severe repair. This purely cosmetic improvement will debilitate the many disabled and elderly tenants living at the premises.

If we do not receive a response by <u>**5pm on December 16, 2016**</u>, we will seek an emergency federal restraining order staying you from taking any action to remove from operation of the elevator at 946 Bushwick and from harassing the tenants in retaliation for enforcing their rights by way of a federal lawsuit at the Eastern District of New York. **The application will be made immediately following the deadline on December 16, 2016.**

I can be contacted by mail at the address below, by email at swolkensdorfer@bka.org, or by phone at (718) 487-2315.

Sincerely,

Sara Wolkensdorfer, Esq.
Staff Attorney, Brooklyn Legal Services Corporation A
Of Counsel to Martin S. Needelman, Esq.

Cc:     Benjamin Sopkin
        Safeguard Realty Management, Inc.
        120 West 31st Street, 6th Floor
        New York, NY 10001

*building communities, ensuring opportunity, achieving justice*

□ 260 BROADWAY, SUITE 2, BROOKLYN NY 11211        □ 619 THROOP AVENUE, 3RD FLOOR, BROOKLYN NY 11216        □ 1455 MYRTLE AVENUE, 2ND FLOOR, BROOKLYN NY 11237

PHONE: 718-487-2300      FAX: 718-782-6790      WWW.BKA.ORG

**THOMAS McC. SOUTHER**, BOARD CHAIR
**MARTIN S. NEEDELMAN, ESQ.**, CO-EXECUTIVE DIRECTOR, CHIEF COUNSEL
**PAUL J. ACINAPURA, ESQ.**, CO-EXECUTIVE DIRECTOR, GENERAL COUNSEL



**Brooklyn Legal Services Corporation A**
SHRIVER TYLER MACCRATE CENTER FOR JUSTICE

December 16, 2016

Graham Jones
156 Fifth Avenue, 4th Floor
New York, NY 10010

Sent by USPS Priority Certified Mail  7015  3010  0000  1343  4468

<u>SECOND NOTICE: Demand to Cease Reconstruction of Elevator</u>

Dear Mr. Jones,

As you are well aware, my office represents the People's Garden of Bushwick Coalition, an association of tenants living at 920 Bushwick Avenue, 946 Bushwick Avenue, and 1075 Greene Avenue.  We have brought to your attention by letter dated December 8, 2016 to <u>cease</u> from conducting construction on the elevator beginning January 2, 2017 until you take **appropriate steps to provide, maintain, or modify services in preparation for the removal of the building's sole elevator. We urgently requested reasonable accommodation for the elderly and disabled during the four to six months of construction.**  As of date, we have not received a reply from your office.

The removal of such an essential service for such an extended period of time is inexcusable.  A large portion of the tenants at the premises suffer from physical disabilities and/or are elderly, and as such, require the use of elevator services to move throughout and out of their building.  By law, you, as an owner, have a duty to provide each tenant with legally mandated and essential services, and to provide reasonable accommodations for those suffering from a disability.

In addition, as of the date of this writing, there are no permits filed with the Department of Buildings and no evidence to suggest that the elevator is dangerous and in need of immediate and severe repair. This purely cosmetic improvement will debilitate the many disabled and elderly tenants living at the premises.

We have notified your office that we will seek an emergency federal restraining order staying you from taking any action to remove from operation of the elevator at 946 Bushwick and from harassing the tenants in retaliation for enforcing their rights by way of a federal lawsuit at the Eastern District of New York if we do not receive a response by 5pm on December 16, 2016. Please consider this a second notice.  Although the deadline has passed, we are providing an extension for you to reply to our urgent request. <u>We will be seeking a restraining order on Wednesday, December 21, 2016.</u>

I can be contacted by mail at the address below, by email at llee@bka.org, or by phone at (718) 487-2307.

Sincerely,

Lina Lee, Esq.
Staff Attorney, Brooklyn Legal Services Corporation A
Of Counsel to Martin S. Needelman, Esq.

Cc:     Benjamin Sopkin
        Safeguard Realty Management, Inc.
        120 West 31st Street, 6th Floor
        New York, NY 10001

*building communities, ensuring opportunity, achieving justice*

☐ 260 BROADWAY, SUITE 2, BROOKLYN NY 11211      ☐ 619 THROOP AVENUE, 3RD FLOOR, BROOKLYN NY 11216      ☐ 1455 MYRTLE AVENUE, 2ND FLOOR, BROOKLYN NY 11237

PHONE: 718-487-2300      FAX: 718-782-6790      WWW.BKA.ORG

# EXHIBIT C



# NYC™
## Buildings

| Elevator Permit | Department of Buildings |
|---|---|

Application Number: EBN 2560 16

Permit Date: 12/7/2016
Reinstatement Date:
Renewal Date:

Address: BROOKLYN 946 BUSHWICK AVENUE

Device#: 3P1365

Description of Work:

Modernize elevator.

For detailed information regarding this permit, ELV-1 and other related documents shall be available on-site.

Emergency Telephone Day or Night: 311

Assistant Commissioner: 

Commissioner of Buildings: 

Tampering with or knowingly making a false entry in or falsely altering this permit is a crime that is punishable by a fine, imprisonment or both.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
MARIA COLLADO, MARINO LALANE,
JOSE COLLADO, DELMIRA BAEZ, and
CARMEN LOPEZ,

                      Plaintiff,

     -against-                    16-Civ.-

946 BUSHWICK AVENUE, LLC,
SAFEGUARD REALTY MGNT, INC.,
GRAHAM JONES, and BENJAMIN SOPKIN,

                    Defendants.
-------------------------------------------------------------X

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT
OF MOTION FOR A PRELIMINARY INJUNCTION
AND TEMPORARY RESTRAINING ORDER**

By:    Lina Lee (LL 2703)
       Travis J. Arrindell (TA 7605)
       Shekar Krishnan (SK 9995)
       *Of Counsel to Martin S. Needelman, Esq.*
       **Brooklyn Legal Services Corporation A**
       260 Broadway, Suite 2
       Brooklyn, New York 11211
       (718) 487-2300

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................... ii

STATEMENT OF FACTS ...................................................................................................... 2

STATUTORY AND REGULATORY SCHEME ..................................................................... 5

    Title VIII of the Civil Rights Act of 1968 ......................................................................... 5

    New York State Human Rights Law .................................................................................. 6

    The New York City Human Rights Law ............................................................................ 7

ARGUMENT ......................................................................................................................... 8

I.     THE STANDARD FOR A PRELIMINARY INJUNCTION AND TEMPORARY
RESTRAINING ORDER .................................................................................................... 8

II.    PLAINTIFFS WILL SUFFER IRREPARABLE INJURY IF INJUNCTIVE RELIEF IS
NOT GRANTED. .............................................................................................................. 9

III.   PLAINTIFFS ARE LIKELY TO SUCCEED IN THEIR CLAIM THAT DEFENDANTS
HAVE VIOLATED VARIOUS LAWS RELATING TO THE PROVISION OF HOUSING
ACCOMMODATIONS. .................................................................................................... 12

IV.   ALTERNATIVELY, PLAINTIFFS HAVE ESTABLISHED SERIOUS QUESTIONS
GOING TO THE MERITS OF THE CLAIMS AND THE BALANCE OF HARDSHIPS TIPS
DECIDEDLY IN THEIR FAVOR. .................................................................................... 15

IV.   PLAINTIFFS SHOULD BE RELIEVED OF THE REQUIREMENTS OF FRCP 65 (C)
BECAUSE THEY ARE INDIGENT AND DEFENDANTS CAN SHOW NO HARM FROM
WAIVER OF THE SECURITY REQUIREMENT. .............................................................. 16

CONCLUSION .................................................................................................................... 18

## TABLE OF AUTHORITIES

**CASES**

*Andino v. Fischer*, 555 F. Supp. 2d 418 (S.D.N.Y. 2008)............................................9

*Astralis Condo. Ass'n v. Sec'y, U.S. Dep't of Hous. & Urban Dev.*, 620 F.3d 62 (1st Cir. 2010)...................................................................................................14

*Bentley v. Peace and Quiet Realty 2 LLC*, 367 F. Supp. 2d 341 (E.D.N.Y. 2005).................14

*Caulfield v. Bd. of Educ. of the City of New York*, 583 F.2d 605 (2d Cir. 1978).....................9

*Community Housing Trust v. Dept. of Consumer and Regulatory Affairs*, 257 F. Supp. 2d 208 (D.D.C. 2003)..................................................................................14

*Corrigan Dispatch Co. v. Casa Guzman, S.A.*, 569 F.2d 300 (5th Cir. 1978).......................17

*Doe v. Perales*, 782 F. Supp. 201 (W.D.N.Y.1991)..................................................17

*Gresham v. Windrush Partners, Ltd.*, 730 F.2d 1417 (11th Cir. 1984)...........................9-10

*Hamilton Watch Co. v. Benrus Watch Co.*, 206 F.2d 738 (2d Cir. 1953)...............................9

*Heisman Trophy Trust v. Smack Apparel Co.*, 595 F. Supp. 2d 320 (S.D.N.Y. 2009)..............17

*Hubbard v. Samson Management Co.*, 994 F. Supp. 187 (S.D.N.Y. 1998).........................14

*Illinois Bell Tel. Co. v. Illinois Commerce Comm'n.*, 740 F.2d 566 (7th Cir. 1984)..................9

*Int'l Controls Corp. v. Vesco*, 490 F.2d 1334 (2d Cir. 1974)........................................17

*Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.*, 596 F.2d 70 (2d Cir. 1979)....................9, 15

*Kulakowski v. Rochester Hosp. Serv. Corp.*, 779 F. Supp. 710 (W.D.N.Y. 1991)...................17

*La Plaza Defense League v. Kemp*, 742 F. Supp. 792 (S.D.N.Y. 1990)..............................17

*Logan v. Matveevski*, 57 F. Supp. 3d 234 (S.D.N.Y. 2014)...........................................14

*Lopez v. Delta Funding Corp.*, 1998 WL 1537755 (E.D.N.Y. Dec. 23, 1998)......................15

*Maryland Dep't of Human Resources v. United States Dep't of Agric.*, 976 F.2d 1462 (4th Cir. 1992).......................................................................................17

*N.Y. City Triathlon, LLC v. NYC Triathlon Club, Inc.*, 704 F. Supp. 2d 305 (S.D.N.Y. 2010) ..................................................................................................17

*Rivera v. Town of Huntington Housing Authority*, 2012 WL 1933767 (E.D.N.Y. May 29, 2012)..........................................................................................17

*Shapiro v. Cadman Towers, Inc.*, 51 F.3d 328 (2d Cir. 1995)……………………...…...13

*Silver Sage Partners, Ltd. v. City of Desert Hot Springs*, 251 F.3d 814 (9th Cir. 2001)……...…..9

*United States v. California Mobile Home Park Management Co.*, 29 F.3d 1413 (9th Cir.1994).14

*Warner v. Ryobi Motor Prods. Corp.*, 818 F. Supp. 907 (D.S.C. 1992)………………….....17

STATUTES AND REGULATIONS

9 N.Y.C.R.R., Part 465……………………………………………………………….5

42 U.S.C. § 3601……………………...……………………………………………...5

42 U.S.C. § 3602 (h)(1)……………………………………………………….6, 12

42 U.S.C. § 3603…………………………………………………………………12

42 U.S.C. § 3604(f)………………………………………………………………13

42 U.S.C. § 3604 (f)(2)………………………………………………….....6, 12

42 U.S.C. § 3604(f)(3)(B)……………………………………………………...13

24 C.F.R. § 10…………………………………………………………….*passim*

24 C.F.R. § 100.201…………………………………………………....6, 12

24 C.F.R. § 100.201(b)…………………………………………………..6, 12

24 C.F.R. § 100.204…………………………………………………....….6

24 C.F.R. § 100.65(b)(4)…………………………………………………...6

Federal Rules of Civil Procedure 65(c)………………………………….16, 17

N.Y. Exec. Law § 290……………………………………………………….6

N.Y. Exec. Law § 292(10)………………………………………………...7

N.Y. Exec. Law § 292(21)…………………………………………….7, 13

N.Y. Exec. Law § 296(5)…………………………………………………...7

N.Y. Exec. Law § 296 (18)(2)………………………………………….7

N.Y.C. Admin. Code § 8-101………………………………………………15

N.Y.C. Admin. Code § 8-102(10)…………………………………………………8

N.Y.C. Admin. Code § 8-102 (16)(b)………………………………………8, 13

N.Y.C. Admin. Code § 8-107(5)…………………………………………………..8

## PRELIMINARY STATEMENT

The elderly, disabled, mobility-impaired Plaintiffs Maria Collado, Marino Lalane, Jose Collado, Delmira Baez, and Carmen Lopez ("Plaintiffs") seek a temporary restraining order and preliminary injunction prohibiting Defendants from suspending elevator service in the premises located at 946 Bushwick Avenue, Brooklyn, New York 11221 ("946 Buckwick Avenue") pending the determination of this action for injunctive and declaratory relief.  Plaintiffs will suffer immediate and irreparable injury if this motion is not granted.

Plaintiffs reside on the second, third, and sixth floors of the subject building and they suffer from serious physical disabilities that make it prohibitively difficult and dangerous to use the stairs in the building to access their apartments.  Defendants have notified Plaintiffs that they will be eliminating the only elevator in the subject building for a period of up to six months, commencing on January 2, 2017.

Plaintiffs are rent-stabilized tenant at 946 Bushwick Avenue who cannot safely or reasonably climb up to several flights of stairs to their apartments because they suffer from disabilities including joint pain, arthritis, colon cancer, diabetes, high blood pressure, and asthma, which affect their ability to breathe and has weakened their bodies such that they do not have the body strength to ascend or descend stairs independently.  In particular, Plaintiff Maria Collado is an 84-year old senior who has been bound to her wheelchair for the past eight years and cannot walk without assistance.

Plaintiffs must leave their apartments multiple times a day and rely on the elevators to exit the building for essential necessities including picking up groceries, taking out garbage, doing laundry, and visiting family and friends.  It is especially critical for Plaintiffs to visit their doctors and be able to exit the building in case of a health-related emergency.

If Defendants are permitted to remove this elevator, Plaintiffs will not be able to obtain basic necessities for their livelihood including immediate access to their doctors. Plaintiffs live on a fixed-income and do not have the means or resources to locate, pay for, and move to another apartment. Hence, if the proposed elimination of the elevator goes forward as planned, Plaintiffs will be trapped in their apartment and be unable to leave the building in the event of an emergency.

Defendants know that Plaintiffs reside in the building and have mobility restrictions. Plaintiffs have requested reasonable accommodations from Defendants for the duration of the elevator repair at 946 Bushwick Avenue. Defendants have failed to respond to these requests and failed to take any steps to accommodate the Plaintiffs and its other disabled tenants while the work is underway.

## STATEMENT OF FACTS

Plaintiffs are rent-stabilized tenants who live at 946 Bushwick Avenue, housing owned and operated by the Defendants. Plaintiffs have mobility-impairing disabilities and cannot safely ascend or descend up to six flights of stairs to and from their apartments without experiencing extreme pain and risk of falling.

Plaintiff MARIA COLLADO ("Ms. Collado") is a disabled, mobility-impaired, 84-year-old tenant who has lived in Apartment B7 (second floor) for approximately 25 years. *See* Collado Aff. dated Dec. 21, 2016. Ms. Collado has been bound to a wheelchair for eight years and cannot walk. *Id.* ¶¶ 3-4. Ms. Collado uses her wheelchair to move around in her apartment and has trouble getting in and out of her wheelchair. *Id.* Her daughter, Gladys Collado, helps her run her daily errands and visit her doctors a couple of times a week. *Id.* ¶ 5. Ms. Collado relies on the elevator to exit the building. *Id.* Her daughter cannot carry her or the wheelchair up or down the stairs. *Id.* ¶ 10.

2

Plaintiff MARINO LALANE ("Mr. Lalane") is a disabled, mobility-impaired, 69-year-old tenant who has lived in Apartment B8 (second floor) for approximately 38 years. *See* Lalane Aff. dated Dec. 21, 2016. Mr. Lalane suffers from colon cancer, appendicitis, arthritis, asthma, diabetes and cataracts. *Id.* ¶ 17. He received surgery for his colon cancer in 2000 followed by chemotherapy and radiation for six months. *Id.* ¶ 3.

As a result of the surgery, he continues to suffer from its lifelong side effects including constant pain and cramps in the abdomen, weakness and fatigue, and nausea. *Id.* ¶ 4. His appendicitis, arthritis, and asthma exacerbates his ability to breath and he has trouble even standing because of the pain, which at times causes him to vomit. *Id.* ¶¶ 7-9. When he walks even short distances, his knees start to swell and cannot move for up to two minutes. *Id.* ¶ 11. When he tries taking the stairs, he starts to cough and wheeze. *Id.* ¶ 12.

Plaintiff JOSE COLLADO (Mr. Collado") is a disabled, mobility-impaired, 54-year-old tenant who has lived in Apartment C8 (third floor) for approximately 22 years. *See* Jose Collado Aff. dated Dec. 21, 2016. Mr. Collado's diabetes is life-threatening and causes sores to form on his feet. *Id.* ¶ 2. Due to his illness, these sores do not heal properly and cause excruciating pain forcing him to wear a brace around his right foot to allow him to walk. *Id.* ¶ 5. He received surgery eight years ago to remove his pancreas but the scars did not heal properly. *Id.* ¶ 9. When he strains his body, he feels the skin around his scars tearing open. *Id.* He also suffers from high blood pressure. *Id.* ¶ 10.

Plaintiff DELMIRA BAEZ ("Ms. Baez") is a disabled, mobility-impaired, 84-year-old tenant who has lived in Apartment F2 (sixth floor) for approximately 32 years. *See* Baez Aff. dated Dec. 21, 2016. Ms. Baez lives alone and suffers from joint weakness. *Id.* ¶¶ 1-2. She has trouble walking and cannot physically descend and ascend six flights of stairs on a daily basis.

*Id.* ¶ 3.

Plaintiff CARMEN LOPEZ is a disabled, mobility-impaired, 59-year-old tenant who has lived in Apartment F3 (sixth floor) for approximately 34 years. *See* Lopez Aff. dated Dec. 21, 2016. Ms. Lopez suffers from joint weakness and experiences pain when walking long distances and going up and down the stairs. *Id.* ¶ 3. Her husband, Justino Lopez, has high blood pressure and had to get stents put in his arties to reduce the risk of a heart attack. *Id.* ¶¶ 6-7.

The elevator is critical to their health and livelihood as they rely on it to visit their doctors and pick up medication on a regular basis. *See* Collado Aff. ¶¶ 11-14; Baez Aff. ¶¶ 7-12; Jose Collado Aff. ¶¶ 14-16; Lalane Aff. ¶¶ 18-20; Lopez Aff. ¶¶ 11-16. Plaintiffs also rely on the elevator multiple times a day to take care of essential daily errands such as grocery shopping, doing laundry, taking out the trash, and visiting family and friends. *Id.* For example, Ms. Baez attends church every Tuesday, Thursday, Friday, and Sunday for service. She has not missed one service for the past ten years. *See* Baez Aff. ¶ 4.

Plaintiffs receive a fixed income and cannot afford to move and do not have an alternative place that they can temporarily live at while the elevator is out of service. *See* Collado Aff. ¶¶ 15-16; Baez Aff. ¶¶ 13-14; Jose Collado Aff. ¶¶ 17-18; Lalane Aff. ¶¶ 21-22; Lopez Aff. ¶¶ 17-18. They do not have relatives who can provide temporary accommodations for them. *Id.*

Defendants who own and operate the building at 946 Bushwick Avenue are on notice that many elderly tenants and tenants with disabilities reside at the premises. However, request for reasonable accommodations for these vulnerable tenants have been ignored. *See* Exhibit B.

If Defendants remove the elevator from service, Plaintiffs will be trapped in their homes and would not be able to access necessities critical to their livelihood. *See* Collado Aff. ¶¶ 12-

4

13; Baez Aff. ¶ 9; Lalane Aff. ¶ 18; Lopez Aff. ¶ 13.  In fact, their lives would be in danger

because they would not be able to exit their homes in case of a health emergency.  *See* Collado

Aff. ¶¶ 12-13; Baez Aff. ¶ 10-11; Lopez Aff. ¶ 14.  In the event of a fire or gas leak, Plaintiffs

would not be able to vacate the premises quickly.  *Id.*

## STATUTORY AND REGULATORY SCHEME

By failing to ensure access to their apartments, common areas, and other facilities within

the premises, failing to ensure basic services, and failing to offer reasonable accommodations,

Defendants have violated Plaintiffs' rights under:  (1) Title VIII of the Civil Rights Act of 1968,

also known as the Fair Housing Act ("FHA"), as amended by the Fair Housing Amendments Act

of 1988 ("FHAA"), 42 U.S.C. § 3601 *et seq.* and the regulations promulgated thereunder, 24

C.F.R. § 100 *et seq.*; (2) the New York State Human Rights Law, N.Y. Exec. L. § 290 *et seq.*

("State HRL") and the regulations promulgated thereunder, 9 N.Y.C.R.R., Part 465 *et seq.*; and

(3) the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 *et seq.* ("City HRL").

### Title VIII of the Civil Rights Act of 1968, as amended
### by the Fair Housing Amendments Act of 1988

Title VIII of the Civil Rights Act of 1968, also known as the Fair Housing Act ("FHA"),

as amended by the Fair Housing Amendments Act of 1988 ("FHAA"), 42 U.S.C. § 3601 *et seq.*,

states that "it shall be unlawful . . . [t]o discriminate against any person in the terms, conditions,

or privileges of sale or rental of a dwelling, or in the provision of services or facilities in

connection with such dwelling, because of a handicap of-- (A) that person; or . . . (C) any person

associated with that person."  42 U.S.C. § 3604 (f)(2).

A person is defined as "handicapped" if she has "a physical or mental impairment which

5

substantially limits one or more of such person's major life activities."  42 U.S.C. § 3602 (h)(1);
*see* 24 C.F.R. § 100.201.  "Major life activities" are functions such as "caring for one's self,
performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working."
24 C.F.R. § 100.201(b).

Federal regulations implementing this Act require the dwelling unit to be accessible by
the handicapped persons so as to allow them use and enjoyment of all parts of the building,
including public and common use areas.  *See* 24 C.F.R. § 100.65(b)(4) and 24 C.F.R. § 100.204.
A dwelling unit is "accessible" with respect to the common and public use areas when these
areas can be "approached, entered, and used by individuals with physical disabilities."  24 C.F.R.
§ 100.201.

"Common use areas" are those rooms, spaces, or elements located inside or outside the
building that are available to residents and their guests to use and enjoy.  24 C.F.R.
§ 100.201.

"Public use areas" are those rooms and spaces located inside or outside the building that
are "available to the general public."  24 C.F.R. § 100.201.

## New York State Human Rights Law

The New York State Human Rights Law ("HRL"), N.Y. Exec. Law § 290 *et seq*.
provides, in pertinent part, that:

> (i)   It shall be unlawful discriminatory practice for the owner,
> . . . or managing agent of . . . a housing accommodation . . .
> or any agent or employee thereof:
>
> . . .
>
> (ii)   (2) To discriminate against any person because of . . .
> disability . . . in the terms, conditions or privileges of sale,
> rental or lease of any such housing accommodation or in

> the furnishing of facilities or services on connection therewith.

N.Y. Exec. Law § 296(5).

The State HRL also provides that:

> It shall be an unlawful discriminatory practice for the owner . . . or managing agent of . . . housing accommodations . . . [t]o refuse to make reasonable accommodations in rules, policies, practices or services, when such accommodations may be necessary to afford said person with a disability equal opportunity to use and enjoy a dwelling . . .

N.Y. Exec. Law § 296 (18)(2).

Under the State HRL, the term "disability" is defined as:

> (a) a physical, mental or medical impairment resulting from anatomical, physiological, genetic or neurological conditions which prevents the exercise of a normal bodily function or is demonstrable by medically accepted clinical or laboratory diagnostic techniques, or (b) a record of such impairment or (c) a condition regarded by others as such an impairment . . .

N.Y. Exec. Law § 292(21).

The State HRL defines "housing accommodation" as "any building, structure, or portion thereof which is used or occupied . . . as the home, residence or sleeping place of one or more human beings." N.Y. Exec. Law § 292(10).

### The New York City Human Rights Law

The New York City Human Rights Law ("City HRL"), N.Y.C. Admin. Code § 8-101 *et seq.*, affords protection against discrimination in housing to disabled individuals.

The City HRL provides, in relevant part:

> (a) It shall be unlawful discriminatory practice for the owner . . . or managing agent of . . . a housing accommodation, constructed or to be constructed, or any agent or employee thereof:
>
> . . .

> (2) To discriminate against any person because of such person's actual or perceived . . . disability . . . in the terms, conditions or privileges of the sale, rental or lease of any such housing accommodation . . . or in the furnishing of facilities or services in connection therewith.

N.Y.C. Admin. Code § 8-107(5).

The City HRL defines "housing accommodation" as "any building, structure, or portion thereof which is used or occupied or is intended, arranged or designed to be used or occupied, as the home, residence or sleeping place of one or more human beings." N.Y.C. Admin. Code § 8-102(10). The City HRL defines "physical, medical, mental or psychological impairment" in the following manner:

> (1) An impairment of any system of the body; including, but not limited to: the neurological system; the musculoskeletal system; the special sense organs and respiratory organs, including, but not limited to, speech organs; the cardiovascular system; the reproductive system; the digestive and genito-urinary systems; the hemic and lymphatic systems; the immunological systems; the skin; and the endocrine system; or
>
> (2) A mental or psychological impairment.

N.Y.C. Admin. Code § 8-102 (16)(b).

## ARGUMENT

## I.   THE STANDARD FOR A PRELIMINARY INJUNCTION AND TEMPORARY RESTRAINING ORDER

It is well established that to secure a preliminary injunction or temporary restraining order, a plaintiff must show:

> [P]ossible irreparable injury and either (1) probable success on the merits or (2) sufficiently serious questions going to the merits to make them fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief.

*Caulfield v. Bd. of Educ. of the City of New York*, 583 F.2d 605, 610 (2d Cir. 1978) (emphasis in original) (citations omitted); see also, *Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir. 1979) (citing *Caulfield*); *Andino v. Fischer*, 555 F. Supp. 2d 418, 419 (S.D.N.Y. 2008) (citations omitted).

Where the balance of hardships tips decidedly in favor of the moving party, the Second Circuit has demanded considerably less in terms of "likelihood of success:"

> To justify a temporary injunction it is not necessary that the plaintiff's right to a final decision, after a trial, be absolutely certain, wholly without doubt; if the other elements are present (i.e., the balance of hardships decidedly toward plaintiff), it will ordinarily be enough that the plaintiff has raised questions going to the merits so serious, substantial, difficult and doubtful, as to make them a fair ground for litigation and for more deliberate investigation.

*Hamilton Watch Co. v. Benrus Watch Co.*, 206 F.2d 738, 740 (2d Cir. 1953) (citations omitted).

## II.   PLAINTIFFS WILL SUFFER IRREPARABLE INJURY IF INJUNCTIVE RELIEF IS NOT GRANTED.

Plaintiffs will suffer irreparable injury if they are not afforded injunctive relief. Indeed, irreparable harm is presumed once a person alleging discrimination has established a violation of the Fair Housing Act. *Silver Sage Partners, Ltd. v. City of Desert Hot Springs*, 251 F.3d 814, 826 (9th Cir. 2001); *Gresham v. Windrush Partners, Ltd.*, 730 F.2d 1417, 1423 (11th Cir. 1984); *see also Illinois Bell Tel. Co. v. Illinois Commerce Comm'n.*, 740 F.2d 566, 571 (7th Cir. 1984) (finding that a traditional showing of irreparable harm is not required if the statute specifically provides for injunctive relief). In *Silver Sage Partners*, the Ninth Circuit found that "where a defendant has violated a civil rights statute, we will presume that the plaintiff has suffered irreparable injury from the fact of the defendant's violation." 251 F.3d at 827. The Court cited to *Gresham v. Windrush Partners, Ltd.*, 730 F.2d 1417, 1423 (11th Cir. 1984), where the circuit found that "irreparable injury may be presumed from the fact of discrimination and violations of

fair housing statutes." *Id.* Given that Plaintiffs will imminently lose access to building services, they will be denied rights under the Fair Housing Act, and will thus, be immediately and irreparably harmed.

Defendants' intended conduct in relation to 946 Bushwick Avenue will inevitably result in violations of the Fair Housing Act Amendments, causing irreparable harm to Plaintiffs. *Caulfield*, 583 F.2d at 610; *Silver Sage Partners*, 251 F.3d at 826. First, it is undeniable that Plaintiffs are disabled persons requiring elevator services for their day-to-day activities.

Ms. Collado is 84 years old and has been bound to a wheelchair for the past eight years. She cannot walk without assistance, let alone ascend and descend even one flight of stairs. Mr. Lalane suffers from colon cancer, appendicitis, arthritis, asthma, diabetes, and cataracts in both eyes, which markedly affects his ability to breath and has weakened his body to the point that he lacks the required body strength to use stairs as they are intended. Mr. Collado suffers from diabetes that has caused sores to form on his feet. Due to his illness, these sores do not heal causing him excruciating pain when putting pressure on his foot to the extent that he has to wear a foot brace to decrease the pain. He cannot walk long distances and cannot descend and ascend three flights of stairs daily without experiencing pain. Ms. Baez is 84 years old, lives alone, and suffers from joint weakness. Due to her age and disability, she has trouble walking, let alone walking up and down six flights of stairs. Finally, Ms. Lopez and her husband also suffer from joint weakness and have difficultly ascending and descending six flights of stairs on a daily basis. Her husband also suffers from high blood pressure and had to get stents placed in his arties to reduce the risk of a heart attack.

These disabilities severely hamper their ability to ascend and descend several flights of stairs. Plaintiffs will not be able to go about their day-to-day activities including running daily

errands, picking up groceries, doing laundry, taking out the trash, visiting their family and friends and even their doctors on a regular basis. Plaintiffs will not be able to safely leave their apartments in the event of a health emergency. In the case of a building fire or gas leak, they would not be able to exit the premises. Therefore, having access to elevator services or an accommodation allowing Plaintiffs to reasonably exit their home is vital to Plaintiffs' life and well-being.

Second, the denial of elevator services will adversely affect Plaintiffs' mental health and social well-being. Plaintiffs are mostly seniors and have been living in their homes for up to three decades. They have friends and community affairs to attend to on a regular basis that is essential to their livelihood. For example, Ms. Baez attends church four times a week for service and has not missed one service for the past ten years. This is essential to her being. Without the elevator, Plaintiffs will be cruelly cut off from the supportive lifelines that make life manageable for the elderly and those with disabilities.

Lastly, Defendants have failed to offer any reasonable accommodation to Plaintiffs while elevator services are terminated in Plaintiffs' building. Defendants were notified that there are disabled tenants living at 946 Bushwick Avenue who require regular and proper elevator services, but choose to turn a blind eye to their plight. Defendants decidedly refused to entertain accommodations. There cannot be a clearer case where Defendants' intended conduct will have a discriminatory result in violation of federal law.

Given that Plaintiffs have established a violation of the Fair Housing Act Amendments, and the violation of similar terms contained in the New York State and New York City Human Rights Laws, coupled with the suffering and acute possibility of medical emergencies, Plaintiffs

have illustrated that they will suffer immediate and irreparable harm should the elevator service be removed without an appropriate accommodation.

**III.    PLAINTIFFS ARE LIKELY TO SUCCEED IN THEIR CLAIM THAT DEFENDANTS HAVE VIOLATED VARIOUS LAWS RELATING TO THE PROVISION OF HOUSING ACCOMMODATIONS.**

Plaintiffs are likely to succeed on the merits of their claims. Title VIII of the Civil Rights Act of 1968, also known as the FHA, as amended by the FHAA, 42 U.S.C. § 3603, states that "it shall be unlawful . . . [t]o discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap of (A) that person; or . . . (C) any person associated with that person." 42 U.S.C. § 3604 (f)(2).

A person is defined as "handicapped" if she has "a physical or mental impairment which substantially limits one or more of such person's major life activities." 42 U.S.C. § 3602 (h)(1); *see* 24 C.F.R. § 100.201. "Major life activities" are functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working. 24 C.F.R. § 100.201(b).

Plaintiffs clearly meet this criteria. Plaintiffs are handicapped under the meaning of the law given their severe mobility impairments. If Defendants are allowed to remove the elevator from service as planned at 946 Bushwick Avenue, they will be discriminating against Plaintiffs on the basis of disability in the provision of services or facilities in connection with Plaintiffs' dwelling.

The analysis is similar under the New York State and City Human Rights Laws, which affords protection against discrimination in housing to disabled individuals. Under the State HRL, "disability" is defined as:

12

> (a) a physical, mental or medical impairment resulting from anatomical, physiological, genetic or neurological conditions which prevents the exercise of a normal bodily function or is demonstrable by medically accepted clinical or laboratory diagnostic techniques, or (b) a record of such impairment or (c) a condition regarded by others as such an impairment . . .

N.Y. Exec. Law § 292(21). As for the City HRL, "physical, medical, mental or psychological impairment" are defined in the following manner:

> (1) An impairment of any system of the body; including, but not limited to: the neurological system; the musculoskeletal system; the special sense organs and respiratory organs, including, but not limited to, speech organs; the cardiovascular system; the reproductive system; the digestive and genito-urinary systems; the hemic and lymphatic systems; the immunological systems; the skin; and the endocrine system; or
>
> (2) A mental or psychological impairment.

N.Y.C. Admin. Code § 8-102 (16)(b).   Plaintiffs' impairments as detailed above meet the requisite criteria.

> Section 3604(f) of the FHA makes it unlawful to (1) discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap of that buyer or renter . . . [or] (2) discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap of that person.

42 U.S.C. § 3604(f). Discrimination includes

> a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling.

42 U.S.C. § 3604(f)(3)(B).

The Second Circuit has held that the "reasonable accommodation" provision of the Act requires landlords to waive or modify facially neutral rules or practices where such practices operate to deny a handicapped person equal opportunity to use and enjoy a dwelling. *Shapiro v.*

13

*Cadman Towers, Inc.*, 51 F.3d 328, 333 (2d Cir. 1995); *Bentley v. Peace and Quiet Realty 2 LLC*, 367 F. Supp. 2d 341 (E.D.N.Y. 2005); *see also*, *United States v. California Mobile Home Park Management Co.*, 29 F.3d 1413 (9th Cir. 1994).

> To determine whether the Act requires a proposed accommodation, courts generally balance the burdens the contemplated accommodation imposes on the defendant against the benefits to the plaintiff . . . [and] typically find an accommodation reasonable when it imposes no undue financial or administrative hardships on the defendant and 'when it does not undermine the basic purpose of the [challenged] requirement.'

*Hubbard v. Samson Management Co.*, 994 F. Supp. 187, 190 (S.D.N.Y. 1998).

Defendants must offer to engage in an "interactive process" to explore the possibility of a reasonable accommodation. *Astralis Condo. Ass'n v. Sec'y, U.S. Dep't of Hous. & Urban Dev.*, 620 F.3d 62, 69 (1st Cir. 2010), *cited in*, *Logan v. Matveevski*, 57 F. Supp. 3d 234 (S.D.N.Y. 2014). Moreover, "[t]raditionally, courts have broadly interpreted the FHA, so as to fully effectuate Congress' remedial purpose," and the "FHAA is a broad mandate to eliminate discrimination against and equalize housing opportunities for disabled individuals." *Community Housing Trust v. Dept. of Consumer and Regulatory Affairs*, 257 F. Supp. 2d 208, 220 (D.D.C. 2003) (citations omitted).

Here, Plaintiffs have shown a likelihood of success on their claim that Defendants have discriminated against them by failing to afford them a reasonable accommodation that will prevent their apartment from being made unavailable to them and enable them to access their dwelling as non-disabled tenants are able to do. There is no doubt that without elevator service, Plaintiffs will be precluded from entering and leaving their dwelling units and performing essential, vital life activities like running daily essential errands, visiting their doctors,

socializing, and obtaining other kinds of medical care. Plaintiffs will also be placed at risk in the event of a fire or other emergency.

Although Defendants were on notice of Plaintiffs' disabilities, they failed to offer them any accommodation whatever, and also failed to delay the termination of elevator service so that they and Plaintiffs could even explore the possibility of providing a reasonable accommodation. Indeed, Defendants' decision to take the building's elevator out of service after giving less than one month's notice without any offer to provide any reasonable accommodations during construction to Plaintiffs, and other elderly or disabled tenants, seemed calculated to preclude Plaintiffs and their neighbors from exercising their rights under the FHA and State and City laws.

Accordingly, Plaintiffs therefore has shown sufficient likelihood of success on their discrimination claims to support the issuance of a temporary restraining order and preliminary injunction to maintain the status quo during this litigation.

## IV.     ALTERNATIVELY, PLAINTIFFS HAVE ESTABLISHED SERIOUS QUESTIONS GOING TO THE MERITS OF THE CLAIMS AND THE BALANCE OF HARDSHIPS TIPS DECIDEDLY IN THEIR FAVOR.

The foregoing demonstrates that Plaintiffs are threatened with irreparable harm and they are likely to prevail on the merits. However, even if Plaintiffs have not shown probable success on the merits, they have presented sufficiently serious questions as to the merits and that the balance of hardships tips decidedly in their favor. *See Jackson Dairy, Inc.*, 596 F.2d at 72.

Plaintiffs have demonstrated that serious questions go to the merits of their claims that Defendants have violated various laws relating to the provision of housing accommodations. As previously discussed, if denied elevator services or appropriate and reasonable accommodations, Plaintiffs are precluded from obtaining essential medical services and participating in other vital, regular activities. It has been made abundantly clear to Plaintiffs that Defendants are not

15

interested in negotiating reasonable accommodations related to their rent-stabilized tenancies. Therefore, serious questions at least exist going to the merits of Plaintiffs' claims against Defendants.

The balance of hardships decidedly tips in favor of Plaintiffs. They are facing imminent loss of their freedom to move freely between their homes and the community where they obtain medical services, food, and other necessary services. Plaintiffs also stand to suffer life threating harm if in case of a medical emergency, fire or gas leak, they are unable to exit quickly enough. This hardship—especially given Plaintiffs' ages and disabilities—cannot be understated. The loss of the elevator in the building will not only cause Plaintiffs hardship and isolation, it is dangerous to their physical health and well-being. Any harm to Defendants is minimal in comparison to the irreparable harm that would come to Plaintiffs if he loses that access and freedom.

Accordingly, Plaintiffs have established serious questions going to the merits of the claims and that the balance of hardships tips decidedly in Plaintiffs' favor.

## IV.    PLAINTIFFS SHOULD BE RELIEVED OF THE REQUIREMENTS OF FRCP 65 (C) BECAUSE THEY ARE INDIGENT AND DEFENDANTS CAN SHOW NO HARM FROM WAIVER OF THE SECURITY REQUIREMENT.

As impoverished persons, Plaintiffs should be relieved of the requirements of Federal Rules of Civil Procedure 65(c).

Federal Rules of Civil Procedure 65(c) provides, in relevant part, that, "The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained."

However, a majority of federal circuits leave to the trial court's discretion not just the amount of the bond, but the question of whether to require a bond at all. "The amount of

16

security required is a matter for the discretion of the trial court; it may elect to require no security at all." *Corrigan Dispatch Co. v. Casa Guzman, S.A.*, 569 F.2d 300, 303 (5th Cir. 1978); *see also, Int'l Controls Corp. v. Vesco*, 490 F.2d 1334, 1356 (2d Cir. 1974). While circuit courts have split over whether judges can waive the bond requirement altogether, even circuits that adamantly reject a "waiver" interpretation of the Rule are equally adamant that the amount of the bond is within the judge's discretion. *See, e.g., Maryland Dep't of Human Resources v. United States Dep't of Agric.*, 976 F.2d 1462, 1483 (4th Cir. 1992).

Many federal courts have treated a plaintiff's poverty as reason to require a nominal bond or none at all. Requiring a substantial bond would effectively deny an impoverished plaintiff judicial review because an impoverished plaintiff could not otherwise secure an injunction to avoid irreparable harm while awaiting a judgment on the merits of the case. *See La Plaza Defense League v. Kemp*, 742 F. Supp. 792, 807 n.13 (S.D.N.Y. 1990); *Lopez v. Delta Funding Corp.*, 1998 WL 1537755, at *15 (E.D.N.Y. Dec. 23, 1998); *Doe v. Perales*, 782 F. Supp. 201, 206 (W.D.N.Y.1991); *Kulakowski v. Rochester Hosp. Serv. Corp.*, 779 F. Supp. 710, 717 (W.D.N.Y. 1991); *Warner v. Ryobi Motor Prods. Corp.*, 818 F. Supp. 907, 909 (D.S.C. 1992).

Here, Plaintiffs are elderly, indigent, and live on a fixed income.

Defendants also cannot prove that, absent the posting of a bond, they will suffer any actual harm. *N.Y. City Triathlon, LLC v. NYC Triathlon Club, Inc.*, 704 F. Supp. 2d 305, 345 (S.D.N.Y. 2010); *Heisman Trophy Trust v. Smack Apparel Co.*, 595 F. Supp. 2d 320, 329 (S.D.N.Y. 2009); *Rivera v. Town of Huntington Housing Authority*, 2012 WL 1933767, at *7 (E.D.N.Y. May 29, 2012).

The Court should, accordingly, exercise its discretion and waive the requirements of FRCP 65(c).

**CONCLUSION**

Should the elevator at 946 Bushwick Avenue be taken out of operation, the harm that will accrue to Plaintiffs will be immediate and irreparable. If, however, a temporary restraining order and preliminary injunction are granted, the parties will be afforded an opportunity to craft a meaningful and reasonable accommodation that will ensure the safety and well-being of Plaintiffs once the work is commenced. For the foregoing reasons, Plaintiffs' motion for a temporary restraining order and preliminary injunction should be granted.

Dated: December 29, 2016
New York, NY

Respectfully submitted,

By: Lina Lee (LL 2703)
Travis J. Arrindell (TA 7605)
Shekar Krishnan (SK 9995)
*Of Counsel to Martin S. Needelman, Esq.*
**Brooklyn Legal Services Corporation A**
260 Broadway, Suite 2
Brooklyn, New York 11211
(718) 487-2300

19