UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------x
MARIA COLLADO, MARINO LALANE,
and JOSE COLLADO,

                Plaintiffs,                                MEMORANDUM AND ORDER
                                                                16-CV-7173

  - against –

946 BUSHWICK AVENUE, LLC,
SAFEGUARD REALTY MGNT, INC.,
GRAHAM JONES, and BENJAMIN SOPKIN,

                Defendants.
---------------------------------------------------------x
GLASSER, Senior United States District Judge:

       This case concerns the sole elevator at 946 Bushwick Avenue, Brooklyn NY (the "Building"), a residential building with 53 apartments. Plaintiffs are tenants of the Building who are allegedly handicapped and require use of the elevator to access their apartments. They initiated this action on December 30, 2016 against Defendants, the Building's owners, in response to posted notices that the elevator would be completely shut down for repairs beginning on January 2, 2017. Plaintiffs alleged that Defendants violated their rights under the Fair Housing Act ("FHA"), 42 U.S.C. § 3604, and the New York State and City Human Rights Laws, N.Y. Exec. Law § 290 et seq. and N.Y.C. Admin. Code § 8-101 et seq., by allegedly refusing to provide a reasonable accommodation for Plaintiffs during the elevator shutdown.

       This dispute was settled in an agreement endorsed by the Court on February 7, 2017. Pursuant to that agreement, the Defendants installed a chairlift from the first to second floor of the Building for the duration of the elevator repairs, which have since been completed. Before the Court are the parties' cross-motions for attorney's fees.

1

**BACKGROUND**

An overview of the history of this case is required to fully address the parties' motions.

Pre-Litigation Events

Defendants purchased the Building in June 2016. ECF 21-10, Recorded Deed. The Building's elevator was non-compliant with New York City regulations long before the purchase, as indicated in violations issued by the New York City Department of Buildings ("DOB") dating back to 1998. ECF 5-3, Building Violations. To bring the elevator into compliance, Defendants were required to make repairs that necessitated completely decommissioning the elevator. ECF 21-12, Hearing Transcript ("TR"), at 60:20-25. Defendants posted three notices, in both English and Spanish, notifying tenants of the impending elevator shutdown:

- The first notice was posted on September 26, 2016, and alerted residents that "in approximately 2-2 ½ months, the elevator will be replaced." It stated that the elevator would be offline for 4-5 months, depending on the length of the job. ECF 5-4.

- The second notice was posted on November 29, 2016, and alerted residents that the elevator repairs would begin on January 2, 2017. It stated that the elevator would be offline for 4-6 months. ECF 5-5.

- The third notice was the DOB work permit and notices which were posted on the elevator door on each floor of the Building on December 15, 2016. ECF 5-7.

On December 8 and 16, 2016, Plaintiffs, through their attorneys, sent two letters to Defendants. ECF 21-8, 21-9.[1] The letters stated, in relevant part, that "[a] large portion of the

---

[1] Defendants claim that Plaintiffs were aware Defendants were represented by counsel because they had been previously involved with Defendants' counsel in an unrelated proceeding in another court. Jones Aff. 1, at ¶ 7; ECF 5, Affidavit of David Lee, at ¶ 30. On that basis,

tenants at the premises suffer from physical disabilities and/or are elderly, and as such, require the use of elevator services to move throughout and out of their building," and demanded that Defendants "<u>cease from conducting construction on the elevator until you take appropriate steps to provide, maintain, or modify services in preparation for the removal of the building's sole elevator.</u>" <u>Id.</u> (emphasis in original). The letters also threatened to "seek an emergency federal restraining order" if Defendants failed to respond by a certain date. <u>Id.</u> Defendants received the letters on December 12 and 21, 2016, respectively, but did not respond to them. ECF 5, First Affidavit of Graham Jones ("Jones Aff. 1"), at ¶ 7.

At 3:30 p.m. on Thursday, December 29, 2016, Plaintiffs' counsel left a voice message for Defendants, stating that they planned to file an action, and seek a TRO, in federal court the next morning. Jones Aff. 1, at ¶ 9; ECF 18-1, Declaration of Lina Lee, at ¶ 8. Defendants' counsel returned the call that day. <u>Id.</u> at ¶ 9.

<u>Initiation of this Lawsuit and Temporary Restraining Order</u>

The following day, Friday, December 30, 2016, Plaintiffs initiated this action, alleging that Defendants had discriminated against them by refusing to make reasonable accommodations during the impending elevator shutdown. The following five tenants were named plaintiffs:

- <u>Maria Collado</u>: lives on the second floor. She is wheelchair bound and cannot walk;

- <u>Jose Collado</u>: lives on the third floor. He reports suffering from high blood pressure and Type 2 diabetes, which results in painful blisters on his feet;

- <u>Marino Lalane</u>: lives on the second floor. He reports pain and cramping related to colon cancer surgery in 2000, has trouble breathing and a "weak body," and suffers from appendicitis, asthma, arthritis, diabetes and cataracts;

- <u>Delmira Baez</u>: lives on the sixth floor. She reports weakness in her knees; and

---

Defendants maintain that Plaintiffs should have sent the letters to Defendants' counsel. Instead, Plaintiffs sent the letters to Defendants directly.

3

- Carmen Lopez: lives on the sixth floor. She reports weakness in her knees and states that her husband has high blood pressure.

ECF 1, Complaint ("Complt.") at ¶¶ 9-13; ECF 3, Affidavits of Plaintiffs, at pp. 11-28. Defendants have maintained throughout that they were unaware of the Plaintiffs' alleged disabilities prior to the initiation of this case. ECF 5, Declaration of David Lee, at ¶ 28; Jones Aff. 1 at ¶ 7.

Plaintiffs sought a temporary restraining order and preliminary injunction to halt the elevator repairs, scheduled to begin Monday, January 2, 2017. ECF 3. After a brief hearing, the Court postponed a ruling on the motion until January 4, 2017 when, following oral argument, the Court granted the TRO. ECF 8. The Court noted that there were provocative social and legal issues to consider, and that the Defendants would not be prejudiced by delaying the repairs for 14 days while the parties did their research and attempted to settle the dispute. Transcript dated Jan. 4, 2017, at 13:17-24. The written temporary restraining order stated, in part:

> In particular plaintiff Maria Collado, who is wheelchair bound, has demonstrated that she will be irreparably harmed if she is unable to use the elevator to leave the apartment building. Further, the Court is satisfied that there are 'sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of the hardships tipping decidedly towards the [Plaintiffs].'

ECF 8, at p. 1.

Preliminary Injunction Hearing

On January 18, 2017, the Court conducted a hearing on the motion for a preliminary injunction. The parties stipulated that Ms. Collado was handicapped, but Defendants disputed the disability of the other four Plaintiffs. Defendants' counsel contended that one plaintiff, Ms. Baez, had never intended to join the lawsuit and claimed that Plaintiffs' counsel included her as a plaintiff, and had her sign an affidavit, against her wishes. TR at 3:15-4:12.

The Court heard testimony from three Plaintiffs, Ms. Collado, Mr. Collado and Mr. Lalane. Following their testimony, the Court noted that,

> [t]he fact that somebody may be suffering from arthritis, asthma, or diabetes, there are lots of people who suffer from a variety of illnesses but still manage to carry on their everyday affairs. I haven't heard any testimony which satisfies me completely that the people, other than Ms. Collado, are incapable of doing their everyday affairs; getting dressed, cooking, washing, doing the things that require carrying on the affairs of every day.

TR at 62:20-63:2.

The Plaintiffs made no reasonable accommodation proposals as they were obligated to do. Taylor v. Harbour Pointe Homeowners Ass'n, 690 F.3d 44, 49 (2d Cir. 2012). At that hearing, the Defendants proposed two possible accommodations, as they had also done during the January 4, 2017 hearing. TR at 2:10-18. First, Defendants offered to temporarily relocate Ms. Collado to a ground floor apartment in another building during the pendency of the repairs, to pay the cost of moving her there and the increased difference in rent. Id. Second, Defendants offered to install a chairlift from the first to second floor to Ms. Collado's second floor apartment. Id. Although initially rejected by Ms. Collado, the chairlift was the accommodation ultimately accepted by the Plaintiffs.

Plaintiffs belatedly proposed various accommodations, none of which were feasible. First, Plaintiffs proposed that Ms. Collado and Mr. Collado move into two uninhabited first floor apartments in the Building and Defendants hire a porter service to carry groceries and other packages up and down the stairs for the other Plaintiffs. TR at 42:19-43:2. In response, Jones testified that the empty first floor apartments were completely gutted and would be uninhabitable for five months. TR at 50:11-21, 54:11-23. The Court found that proposal unreasonable. TR at 61:18-24. Were the apartments habitable, Defendants said they would have complied with that request. Jones Aff. 1 at ¶ 10. Alternatively, Plaintiffs proposed that the elevator be made

available for use during specified times every day. TR at 63:22-64:12. However, both Jones and the Defendants' elevator contractor testified that the nature of the repairs required a complete shutdown of the elevator. TR at 61:9-17, 65:6-15. That accommodation was also impossible and, therefore, not reasonable. Thus, the Court noted that "I haven't heard accommodations that are feasible or reasonable from the plaintiff." TR at 67:2-3.

Before the hearing was completed, the Court invited the parties to Chambers to explore an amicable resolution and a reasonable accommodation for Ms. Collado. Another conference was scheduled for the following week. The motion for a preliminary injunction was held in abeyance in the interim.

Settlement Discussions and Agreement

On January 26, 2017, the following week, the parties appeared to further discuss the installation of a chairlift as a reasonable accommodation. ECF 13. The Plaintiffs' rejection of an indemnity clause in the settlement agreement, requested by the Defendants, scuttled what was otherwise an acceptable proposal. ECF 18-1, Dec. of Lina Lee, at ¶ 17. The parties met again on January 31, 2017. Plaintiffs then ultimately agreed to the chairlift, and with the Court's assistance, a settlement agreement was reached. Id. at ¶ 18; ECF 14.

That agreement was "so ordered" by the Court on February 7, 2017. ECF 17. It provided that the Defendants would install a chairlift from the first to second floor while the elevator was decommissioned, and would use their best efforts to complete the repairs and obtain DOB approval within two months. In exchange, Plaintiffs would withdraw their action. Id. at ¶¶ 1, 5, 7. The agreement also provided that the Court would retain jurisdiction over this case and that two plaintiffs, Delmira Baez and Carmen Lopez, were voluntarily dismissed. Id. at ¶¶ 9, 10.

6

Subsequent Events

The chairlift was installed on March 3, 2017. ECF 21-2, Second Affidavit of Jones ("Jones Aff. 2") at ¶ 2. On March 9, 2017, Plaintiffs moved this Court for an award of attorney's fees in the amount of $54,325.25. ECF 18. Defendants cross-moved for attorney's fees in the amount of $14,165.82. ECF 21. Those motions are pending before the Court.

In support of their claims, Defendants submitted evidence addressing the alleged disabilities of the four Plaintiffs other than Ms. Collado. First, Defendants offered affidavits from Ms. Lopez and Ms. Baez, the only plaintiffs who lived above the third floor of the Building. ECF 21-4, Affidavit of Carmen Lopez, at ¶¶ 2-4; ECF 21-5, Affidavit of Delmira Baez, at ¶¶ 2-3. Each swore that she never intended to join this lawsuit and that she signed her affidavit, which counsel notarized and filed on her behalf, under false pretenses. See also ECF 21-6, Affidavit of Benjamin Cintron (Ms. Baez's son who interpreted for her on that occasion and corroborated her affidavit).

Second, Defendants contend that neither Mr. Collado nor Mr. Lalane used the chairlift, and submitted evidence that they assert proves neither is disabled. Specifically, video footage depicts the men walking up and down the Building's stairs to their second and third floor apartments. ECF 21-17; 21-18; 21-19; 23-1; 23-3; Compact Discs. In one video, Mr. Lalane drags a grocery cart up the stairs; in another, Mr. Collado carries a small child down the stairs and, in another, two grocery bags up the stairs. Video footage also shows the men walking down the stairs within eyeshot of their attorney who was waiting for them in the lobby. Additionally, Jones and Peter Minic, the Building's superintendent, offer affidavits that they personally witnessed some of these events. Jones Aff. 2 at ¶¶ 4-7; ECF 21-3, Affidavit of Peter Minic ("Minic Aff.") at ¶¶ 2, 5, 8, 11. For example, Jones and Minic both swore that they were in the

7

Building lobby on January 19, 2017 (the day after the preliminary injunction hearing) when Mr. Lalane entered noticeably winded from "cardiovascular exercise" and then "rapidly" walked up the stairs. Id. at ¶ 8; Jones Aff. 2 at ¶ 7. Plaintiffs have not disputed these affidavits or videos.

On June 1, 2017, Defendants notified the Court that the elevator had passed DOB inspection and was fully operational. ECF 24.

## LEGAL STANDARD

Under the FHA, a court "may allow the prevailing party, other than the United States, a reasonable attorney's fee and costs." 42 U.S.C. § 3613(c)(2). Attorney's fees are awarded in the court's discretion. Hensley v. Eckerhart, 461 U.S. 424, 437 (1983).

A plaintiff who is the prevailing party "should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." Id. at 429 (citations omitted). A prevailing party is one who gets "actual relief on the merits of his claim [that] materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." Lefemine v. Wideman, 133 S. Ct. 9, 11 (2012). Both "enforceable judgments on the merits and court-ordered consent decrees" create the required alteration of the legal relationship to permit attorney's fees. Buckhannon Bd. & Care Home, Inc. v. W. Virginia Dep't of Health & Human Res., 532 U.S. 598, 604 (2001); see also Roberson v. Giuliani et al, 346 F.3d 75 (2d Cir. 2003). Conversely, a "defendant's voluntary change in conduct, although perhaps accomplishing what the plaintiff sought to achieve by the lawsuit, lacks the necessary judicial imprimatur on the change." Buckhannon, 532 U.S. at 605. "Never have we awarded attorney's fees for a nonjudicial 'alteration of actual circumstances.'" Id. at 606. By extension, I also find that a nonfrivolous but unnecessarily litigious lawsuit which

would have reached the same destination by civil discourse, as was evidenced here, does not merit attorney's fees.

A defendant may recover attorney's fees in rarer cases. Attorney's fees are awarded to a prevailing defendant "upon a finding that the plaintiff's action was frivolous, unreasonable or without foundation." Fox v. Vice, 563 U.S. 826, 833 (2011) citing Christiansburg Garment Co. v. Equal Employment Opportunity Comm'n, 434 U.S. 412, 421 (1978). "Awarding fees to prevailing defendants under such circumstances protect[s] defendants from burdensome litigation having no legal or factual basis." Taylor, 690 F.3d at 50.

## DISCUSSION

### A. Plaintiffs' Motion

Plaintiffs contend they are the prevailing party in this case because the Court granted their motion for a TRO and the parties entered into a court-endorsed settlement agreement that was favorable to them. On that basis, they claim they are entitled to attorney's fees totaling $54,325.25. The Court disagrees.

1. Reasonable Accommodation Standard

A landlord has violated the FHA if it refuses to make a "'reasonable accommodation' to 'rules, policies, practices or services when such accommodation may be necessary to afford [a handicapped person] equal opportunity to use and enjoy a dwelling.'" Tsombanidis v. W. Haven Fire Dep't, 352 F.3d 565, 578 (2d Cir. 2003), citing 42 U.S.C. § 3604(f)(3)(B). On a failure to accommodate claim, a plaintiff must show:

> (1) that the plaintiff . . . had a handicap within the meaning of § 3602(h); (2) that the defendant knew or reasonably should have been expected to know of the handicap; (3) that the accommodation was likely necessary to afford the handicapped person an equal opportunity to use and enjoy the dwelling; (4) that the accommodation requested was reasonable; and (5) that the defendant refused to make the requested accommodation.

9

Olsen v. Stark Homes, Inc., 759 F.3d 140, 156 (2d Cir. 2014) (emphasis added). To make out a prima facie case, a plaintiff must "give the [defendants] an opportunity to accommodate her," and to do so, "defendants must have had an idea of what accommodation [plaintiff] sought prior to their incurring liability for failing affirmatively to grant a reasonable accommodation." Taylor, 690 F.3d at 49. The Plaintiffs have failed to make the necessary showing. The Defendants, relatively new owners of the Building, did not know, nor is there any reason why they reasonably should have been expected to know, of Ms. Collado's, or anyone else's, handicap. No accommodation, reasonable or otherwise, was requested by the Plaintiffs, as required, and therefore none has been refused.

A reasonable accommodation is "one that gives the otherwise qualified plaintiff with disabilities meaningful access to the programs or services sought." Sinisgallo v. Town of Islip Housing Authority, 865 F.Supp.2d 307, 341 (E.D.N.Y. 2012). "Once the plaintiff has demonstrated that there is a plausible accommodation . . . the defendant bears the burden of proving that the requested accommodation is not reasonable." McElwee v. Cty. of Orange, 700 F.3d 635, 642 (2d Cir. 2012). A defendant "must incur reasonable costs and take modest, affirmative steps to accommodate the handicapped as long as the accommodations sought do not pose an undue hardship or a substantial burden." Tsombanidis, 352 F.3d at 578. However, a defendant "does not have to provide a disabled individual with every accommodation he requests or the accommodation of his choice." McElwee, 700 F.3d at 641.

In a case almost identical to this one, the court denied plaintiff's motion for a preliminary injunction because defendant landlord's proposed accommodation – to temporarily move plaintiff into an apartment on the first floor for the same rent while the elevator was decommissioned – was deemed reasonable. Picaro v. Pelham 1135 LLC, No. 14-CV-7398, 2014

WL 4678265, at *3 (S.D.N.Y. Sept. 19, 2014) (also holding that plaintiff's proposed accommodation – that defendant would hire a porter service to carry the handicapped plaintiff up and down the stairs to his apartment – was unduly burdensome and therefore not reasonable). In this case, had a first floor apartment been habitable, the Defendants would have made it available, as was indicated above. It is significant to note that the landlord found an apartment in another building which he proposed for Ms. Collado to have, but she rejected his proposal. TR. at 44:11-45:17.

    2. Analysis

Here, the unfolding of events make it clear that the Plaintiffs would have been reasonably accommodated had civility, rather than litigiousness, prevailed and therefore a reward to them of attorney's fees would have been unnecessary. It is essentially on that basis that the Defendants' motion for attorney's fees is based. The Court's decision to grant Plaintiffs' motion for a TRO was warranted by the facially apparent irreparable harm to be suffered by Ms. Collado. However, on its face, the complaint fails to make out a prima facie showing for a reasonable accommodation claim. Plaintiffs did not allege that Defendants knew about their disabilities, nor did they propose an accommodation, as they were obligated to do, that Defendants rejected. Plaintiffs' counsel's letters in December 2016 do not cure those deficiencies, and Defendants were apparently unaware of Ms. Collado's condition until this case was filed. Most glaringly, Plaintiffs failed to prove that, other than Ms. Collado, they were actually disabled. There is persuasive evidence that they were not.

This case is strikingly similar to Picaro, except here, instead of denying Plaintiffs' motion for a preliminary injunction outright, this Court encouraged Plaintiffs to accept Defendants' proposed accommodation through settlement. Indeed, this case could have been amicably

11

resolved, as it was, without litigation had Plaintiffs' counsel actually made Defendants aware of the allegedly disabled tenants and proposed reasonable accommodation for them, as the law requires them to do.[2] Defendants were immediately willing to offer reasonable accommodations for Ms. Collado upon learning of her condition, and it appears they would have been amenable to, and likely preferred, accommodating her prior to January 2, 2017 without judicial intervention. Troubling are the affidavits of Ms. Lopez and Ms. Baez, who state under oath that they never intended to join the lawsuit and each signed the affidavit submitted in support of the sought after TRO that was notarized and filed on her behalf under false pretenses. Troubling too are the videos of other named Plaintiffs which are not challenged and belie the disabilities claimed in the initiating papers.

Noted above was the Court's initial reaction to the application for a TRO that it presented legal and social issues that it had no occasion to consider before. The relief the Plaintiffs sought was predicated upon the Fair Housing Act, Title VIII of the Civil Rights Act of 1968, as subsequently amended. It was immediately evident to the Court that, in essence, the genesis of this case was an order by the DOB that the sole elevator in the Building be repaired due to no fault of the Defendants. The repair required that the elevator be decommissioned for a period of months. The FHA, which was enacted to preclude discrimination in all housing practices, as it was construed and applied, required the Defendants to provide reasonable accommodation for tenants he did not know, or have reason to know, were disabled. He did not discriminate against them in any way. The landlord, having no alternative to obeying the order of the DOB, and not

---

[2] Although Defendants posted notice about the decommissioning of the elevator over three months before the repairs were scheduled to begin, Plaintiffs' counsel sent vaguely worded letters just weeks before those repairs were to begin, called Defendants <u>once</u> on the eve of initiating this lawsuit to alert them of the filing for a TRO, and never reached out to their counsel, with whom they were familiar.

being at fault in any respect, was nevertheless deemed obligated to incur the considerable expense of providing reasonable accommodation for the disabled tenants, in addition to repairing the elevator. It was that immediate initial distillation of the facts, and the recognition that liability without fault is generally unknown in the law, Oliver Wendell Holmes, Jr., The Common Law 94-95 ("No case or principle can be found, or if found can be maintained, subjecting an individual to liability for an act done without fault on his part."), that gave the Court pause as to the Plaintiff's likelihood of success on the merits. Given all of the foregoing, an award of attorney's fees to the Plaintiffs is neither merited nor just, and their motion is therefore denied.[3]

### B. Defendants' Motion

For the reasons that follow, an award of attorney's fees to the Defendants must also be denied. First, as is true for the Plaintiffs, the Defendants cannot be deemed the prevailing party. Defendants have not gotten relief on the merits that "materially alters the legal relationship between the parties . . . in a way that directly benefits" them. Lefemine, 133 S. Ct. at 11.

Second, on the record before it, the Court cannot hold that Plaintiffs' claims were so frivolous or vexatious as to justify awarding attorney's fees to Defendants. Defendants claim Plaintiffs' case was frivolous on two bases: first, because most of the Plaintiffs are not actually disabled, and second because Plaintiffs never requested a reasonable accommodation. A motion

---

[3] Applying the more liberal standards under the New York State and City Human Rights Laws leads to the same result. Not only may the court award attorney's fees in its discretion under those laws, but to be deemed a prevailing party, the commencement of a lawsuit must be the "catalyst to effect policy change on the part of the defendant." N.Y.C. Admin. Code § 8-502(f). In addition to Plaintiffs' deficiencies on the merits, the Court is not convinced that initiation of this lawsuit was required to "catalyze" Defendants to provide a reasonable accommodation for Ms. Collado, for the reasons already explained. The Court denies Plaintiffs' motion under the state and city laws for all the reasons previously indicated.

13

to dismiss for failure to state a cause of action was not made, however. Notwithstanding the acceptance of the Defendants' unchallenged post-settlement affidavits and videos, Ms. Collado's disability was not disputed, her standing to commence the action would have sufficed, and such deficiencies as might have been raised to the sufficiency of the complaint would have awaited judicial determination. Taylor, 690 F.3d 44, relied on by Defendants in support of their claim is distinguishable. More clearly relevant is Ng v. King Realty, Inc. et al, No. 16-cv-13, at ECF 9 (S.D.N.Y. Jan. 6. 2016). The application of the Fair Housing Act to this case was not questioned, given its precedential application it could not be, and Plaintiff's reliance upon it to warrant the relief it sought for Ms. Collado was not frivolous or meritless. That they pursued the path of litigation rather than an amenable settlement does not provide a legal basis for sanctioning Plaintiffs with attorney's fees and costs, and drives the Court to deny Defendants' motion.

## CONCLUSION

For the reasons indicated, both motions are denied, and each party is to bear their own attorney's fees incurred during the course of this litigation. Defendants have satisfied their obligations under the settlement agreement, and Plaintiffs are ordered to file a stipulation of dismissal terminating this case within thirty days of this Order.

SO ORDERED.

Dated: Brooklyn, New York
June 30, 2017

/s/
I. Leo Glasser

14